PETER LASKOFSKY, Appellant, *v.* POCAHONTAS CONSOLIDATED COLLIERIES COMPANY, INC., Respondent.

First Department, November 9, 1917.

**Trial — new trial upon ground of newly-discovered evidence — when evidence does not merely impeach witnesses on a collateral matter.**

Where, after the trial of an action for personal injuries in which the defendant pleaded a general release, and three of its employees testified positively that an artificial limb given to the plaintiff as consideration for the release was in the room when the release was signed and was delivered to the plaintiff, plaintiff's attorney ascertained that the limb was not ordered by the defendant until five days after the signature of the release and was not delivered until several days thereafter when it was shipped to the

plaintiff by the manufacturers, a motion for a new trial should not be denied upon the ground that the new evidence merely impeached the witnesses on a collateral matter, as the delivery of the artificial limb was just as direct, important and germane to the defense as was the affixing of the plaintiff's signature which was testified to at the same time by said witnesses.

CLARKE, P. J., and SCOTT, J., dissented.

APPEAL by the plaintiff, Peter Laskofsky, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 18th day of July, 1917, denying plaintiff's motion to set aside a verdict and the judgment entered thereon, and for a new trial, upon the ground of newly-discovered evidence.

*Leonard Klein,* for the appellant.

*Walter L. Glenney,* for the respondent.

SHEARN, J.:

Plaintiff was injured in defendant's coal mine at Pocahontas, Va., and in consequence his right leg had to be amputated. The defendant pleaded a general release dated January 8, 1916, whereby the plaintiff " for the sole consideration of One Artificial Limb to cost $100 to me in hand paid," etc., released the defendant. The release was signed with a cross mark and witnessed by Hammit and Wallace, two of defendant's employees. There was a separate trial of the issues arising upon the release, the plaintiff denying that he ever affixed his mark to it or otherwise executed the release. The defendant called Wallace, Hammit and one Wildsmith, its employees, each of whom testified that the release was signed in the presence of the three on January 8, 1916. Each witness went into detail concerning the circumstances, testifying as to what explanation was made to the plaintiff and who was in the room and all that took place at the time, and each witness testified unequivocally that when the release was signed the artificial limb was in the room where the ceremony took place and that after the release was signed the artificial limb was delivered to the plaintiff who went away with it, one of the witnesses describing how the plaintiff carried it out under his arm, although he was on crutches. The witnesses

were closely cross-examined with reference to all these circumstances calculated to give verity to their story and they all adhered positively to the statement that the artificial limb was in the room when the release was signed and that it was delivered to plaintiff at the time the release was signed on January eighth. Plaintiff denied that he signed any release and also that he received any artificial leg until long after January eighth. He described how he had pleaded to have the defendant give him passage money back to Russia; he said that the defendant had refused to give him the money but promised to get him an artificial leg; that nothing was said about any release of liability; and that the company afterwards procured for him the artificial leg and he went back into their service. The jury found for the defendant. Shortly after the trial the plaintiff's attorney ascertained that the artificial limb was not ordered by the defendant until January 13, 1916, and was not delivered until January 28, 1916, when it was shipped to the plaintiff by the manufacturers. Upon affidavits showing these facts the motion for a new trial was made. Defendant came in and admitted that all of its three witnesses had been mistaken in their testimony concerning the delivery of the artificial limb, that it was unintentional and due to the fact that they were hastily put on the stand without getting in touch with the attorneys for the defendant before testifying and not having an opportunity to go over their records carefully. The motion was denied upon the ground that the new evidence merely impeached the witnesses on a collateral matter. In this we think that the learned justice erred. No one can read the testimony given upon the trial without being impressed with the verity that was given to the testimony of defendant's witnesses by their detailed description of all that occurred at the time of the signing of the release. As the only consideration for the release was the wooden leg and as plaintiff concededly had received one at defendant's cost, the testimony that the leg was in the office and ready to be turned over to plaintiff when he signed the release, and that immediately after signing, the artificial limb was delivered to plaintiff and that he went away with it, bore very strongly upon the verity of defendant's contention. The delivery of the artificial limb was not a

collateral matter. It was just as direct and important and germane to the defense of a release as was the affixing of the cross mark to the paper. Both acts, according to defendant's theory were distinctly related and had a necessary sequence. Now it turns out that this vivid picture drawn by defendant's witnesses existed, as to an important part, only in their imaginations, that they readily swore to things that were not true and concerning which, if really conscientious, they should at least have said they were in doubt. If only one witness had given this testimony, it would be different, but all three gave identical testimony, indicating a willingness to stick together and, on the part of the last two witnesses, to follow the lead of the first witness. It is hardly credible that all three could have been honestly at fault in recollecting this vital matter. The question then arises whether, if the truth had been told, the result would have been different. The question is not, as plaintiff's counsel seems to assume, whether, if the jury had known the facts and these witnesses had testified as they did, the jury would have found differently. Of course they would. The question is whether a true statement from these witnesses would have brought about the same result. In our opinion it would not. The jury could not well have found that the release was signed on January eighth. In the first place, it is improbable that the plaintiff would have signed the release and acknowledged receipt of the artificial limb weeks before he actually received it. In the second place, the testimony of Wallace, with whom plaintiff had the conversation about the leg, shows that Wallace said nothing about a release when he told the plaintiff that defendant would get him a new leg.

In reaching this conclusion we have no intention of weakening or in any respect departing from the salutary rule that a new trial will not be granted where the newly-discovered evidence merely impeaches the witnesses of the successful party upon collateral matters. We base our conclusion upon the fact that the false or mistaken testimony was not upon a collateral matter but that it bore directly upon the issue submitted to the jury whether the plaintiff on January 8, 1916, signed the release, the recited and acknowledged consideration for which was an artificial limb claimed by the

defendant to have been delivered when the release was signed. These motions should be sparingly granted, but in such a case as this where it is so strongly indicated that a different result would have been reached had the truth been made known to the jury, the application should have been granted.

The order is reversed, with ten dollars costs and disbursements, and the motion to set aside the verdict and for a new trial is granted.

SMITH and DAVIS, JJ., concurred; CLARKE, P. J., and SCOTT, J., dissented.

Order reversed, with ten dollars costs and disbursements, and motion granted.